UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE EARL THOMAS,<br><br>           Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 18cv2825-WQH(BLM)<br><br>**REPORT AND RECOMMENDATION RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT BE GRANTED**<br><br>**[ECF Nos. 10, 11, 12]** |

  This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

## **INTRODUCTION**

  On December 17, 2018, Plaintiff filed a complaint seeking judicial review of Administrative Law Judge ("ALJ") Keith Dietterle's decision denying Plaintiff's request to waive the $22,929.80 balance in overpayments made to Plaintiff by the Social Security Administration ("SSA"). See ECF No. 1 at 1. Defendant's answer and the administrative record were filed on February 13, 2019. ECF Nos. 6, 7. On February 15, 2019, the Court issued a briefing schedule for the parties'

1

18cv2825-WQH(BLM)

motions for summary judgment. ECF No. 9. On March 19, 2019, Plaintiff filed his motion for summary judgment. ECF No. 10 ("Plf's Mot.") On April 18, 2019, Defendant filed a cross-motion for summary judgment and opposition in response to Plaintiff's motion. ECF Nos. 11-1, 12-1 (Def's Mot.").[1] Plaintiff's motion for summary judgment seeks approximately "$3,200 [with]held from Plaintiff's [Supplemental Security Income ("SSI")] since October 2015," as well as declaratory relief revoking the 10 percent overpayment penalty applied to Plaintiff's monthly SSI. Plf's Mot. at 4. Defendant's cross-motion for summary judgment "requests that this Court uphold the Commissioner's final decision" on the basis that it is "supported by substantial evidence and free of reversible legal error." Def's Mot. at 6.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff applied to receive SSI in May 2005 and began receiving SSI payments on June 1 of that same year. AR 22. Before receiving any payments, Plaintiff received a notice of eligibility, which stated the amount of benefits Plaintiff would receive per month, as well as the information the SSA used as a basis for Plaintiff's payment amount. AR 22–24. Plaintiff was further informed that he was required to report any change in his situation that could affect his SSI, such as marital status and changes in income or resources for members of Plaintiff's household. AR 24. Plaintiff and his spouse married on September 13, 2011, and his wife moved in with him on October 1, 2011. AR 143. Plaintiff did not notify the SSA that he had married and/or did not report all of his wife's resources. See AR 38.

On April 8, 2015, the SSA issued a notice to Plaintiff that the SSA wanted to speak with him to review whether he remained eligible to receive SSI. AR 36–37. Plaintiff attended the review on April 23, 2015 and responded to several questions concerning his SSI eligibility. See AR 39–51. Also on April 23, 2015, the SSA issued a request for evidence asking Plaintiff to

---

[1] Defendant's cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment appear on the docket as two documents. See ECF Nos. 11-1, 12-1. However, the content of the documents is the same. See id. For clarity, the Court will refer to Defendant's cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment as one document, namely, "Def's Mot."

submit various financial documents to the SSA to enable it to decide whether Plaintiff was correctly paid his SSI. AR 52–53. The request for evidence included a warning that Plaintiff's SSI payments could stop if Plaintiff failed to contact them by May 26, 2015. See AR 53. On June 8, 2015, the SSA issued a second request for the same evidence, which included a warning that Plaintiff's SSI payments could stop if Plaintiff failed to furnish the requested information by June 18, 2015. AR 54–55. Although Plaintiff alleges that he provided some documents in response to the request, the administrative record does not identify which, if any, documents were produced. See generally AR 56–93, 184.

On September 15, 2015, the SSA issued Plaintiff a Notice of Planned Action (the "Notice") informing Plaintiff that the SSA planned to lower Plaintiff's SSI payment from $869.40 per month to $0.00. AR 56. The Notice included the SSA's calculations for determining Plaintiff's ineligibility from May 2013 to May 2014, from August 2014 to June 2015, and for September 2015. AR 69–93. Plaintiff denies receiving the Notice, which was allegedly mailed to him. Plf's Mot. at 2–3. On October 13, 2015, Plaintiff submitted a request for reconsideration of the SSA's determination and requested an "Informal Conference." AR 94. In support of his request, Plaintiff stated his reason was "[f]ailure of the SSA to notify [him] of [his] benefits suspension after the USPS returned [his] benefits suspension notice, dated 9-15-15, to the SSA." Id. On October 23, 2015, the SSA denied Plaintiff's request for reconsideration, explaining that the notice of suspension was sent to the address Plaintiff had on file. AR 95–97. The SSA's denial also explained that Plaintiff failed to address the SSA's reason for suspending Plaintiff's SSI—that Plaintiff's resources were in excess of the countable resource limit. AR 95.

On November 10, 2015, Plaintiff submitted a request for a hearing by an ALJ, stating that the SSA suspended Plaintiff's benefits before providing him notice of suspension. AR 104. On November 18, 2015, the SSA issued a billing statement stating that Plaintiff owed $22,929.24 in overpayments. AR 98. On January 8, 2016, the SSA received Plaintiff's request for waiver of overpayment recovery, in which Plaintiff indicated that the overpayments were not his fault, and that he could not afford to pay the money back. AR 183. Plaintiff stated that he "didn't know the maximum amount of resources he could have and still be eligible for SSI [and that t]he SSA

3

18cv2825-WQH(BLM)

discovered resources that [he] didn't even know belonged to [him]." AR 184. Plaintiff contended that he "told the SSA about stock shared [sic] [he] own[ed] but [he] didn't tell the SSA about 2 of [his] bank accounts that [he] didn't know existed." Id. Plaintiff claimed that in April 2015, he "provided the SSA field office . . . with written notice about [his] wife's car loan payments, [his] bank checking account and stock shares [he] own[ed]." Id.

On April 20, 2016, the SSA issued Plaintiff a notice acknowledging his request for a hearing in front of an ALJ and explaining the next steps to set up and prepare for the hearing. AR 104–106. On September 16, 2016, the SSA issued Plaintiff a pre-hearing letter, including Plaintiff's file and a list of exhibits for Plaintiff's review. AR 123. The letter further informed Plaintiff that it was to his advantage to submit any additional evidence Plaintiff felt was important for the ALJ to examine prior to the hearing. AR 116. On June 16, 2017, Plaintiff was mailed a letter informing him that his ALJ hearing would take place on September 26, 2017. AR 122. Plaintiff was further advised that he needed to submit any additional evidence "no later than 5 business days before the date of" of the hearing, and that he had the right to retain an attorney. AR 124, 128–29. Plaintiff received an amended notice of hearing with additional information on June 23, 2017. AR 132–39. Sometime after the June 23, 2017 letter was sent, Plaintiff's mother mailed a letter to the SSA stating that Plaintiff was incarcerated in the East Mesa Detention Center, that he would be out on September 30, 2017, and that he would contact the SSA to reschedule the hearing. AR 140. Plaintiff and his wife also stopped living together in June of 2017, when Plaintiff became incarcerated. See AR 140, 143.

Plaintiff was released from East Mesa Detention Center on September 30, 2017 and on October 12, 2017, the SSA issued a notice informing Plaintiff that his monthly SSI would increase from $0.00 to $819.68, because Plaintiff was no longer living in a public institution. See AR 140, 177. Plaintiff was further informed that he was due back payments for September and October 2017, but that $108.40 would be subtracted from the $819.68 total for those months based on Plaintiff's prior overpayment balance of $22,929.80. AR 178. Finally, Plaintiff was informed that starting in November 2017, the SSA would withhold 10 percent of his future SSI payments to recoup the money Plaintiff previously was overpaid. Id.

4

Plaintiff's ALJ hearing was rescheduled and on December 11, 2017, the SSA issued a notice of hearing reminder, informing Plaintiff that his hearing was to occur on January 9, 2018. AR 141–42. A report of contact dated December 26, 2017, stated that an SSA worker spoke with Plaintiff's mother about getting Plaintiff's mail to him. AR 145. On December 26, 2017, Plaintiff was issued another notice of his January 9, 2018 hearing, which again advised of the requirements to submit evidence prior to the date of the hearing. AR 146–48. A report of contact dated December 26, 2017, states that Plaintiff called the SSA back and told the SSA worker that he would submit a pre-hearing brief and new evidence prior to the hearing. AR 157. On January 2, 2018, Plaintiff submitted a letter to the ALJ stating that on October 14, 2015, a case worker at the SSA field office, Anne Sauerman, researched Plaintiff's case and informed Plaintiff that the Notice was returned for failure to affix sufficient postage to the envelope. AR 164. On January 4, 2018, the SSA received Plaintiff's acknowledgment of receipt regarding his notice of hearing as to the January 9, 2018 hearing date. AR 176.

## **ALJ HEARING AND DECISION**

On January 9, 2018, at the hearing before ALJ Keith Dietterle, Plaintiff testified that he was not objecting to the fact that he had been overpaid SSI. AR 195. Instead, Plaintiff clarified that the issues were the lack of notification to Plaintiff, and the alleged fact that Plaintiff did not know he had excess resources (i.e., that Plaintiff was "without fault"). Id. At the hearing, Plaintiff described his alleged interaction with case worker Anne Sauerman and explained that Sauerman told Plaintiff that the Notice was returned to the SSA field office, "where it was either lost or trashed." AR 197. Plaintiff stated that he "actually read . . . on [Sauerman's] computer screen in the field office -- that [the Notice] was returned by the postal office." AR 198. Plaintiff alleges that he eventually received the notice from Pennsylvania after he "called the 800 number," and that it was postmarked for October 19, 2015, which was after the SSI suspended Plaintiff's benefits. AR 196–98. Plaintiff stated that he did not "know what date he actually" received the Notice, but after he was informed during the 800 call that his benefits had been suspended, he went to his SSA field office and filed a request for reconsideration. AR 198–99. Plaintiff stated "the field office denied [his] request for reconsideration over the fact that the 10-

5

day notice didn't have a chance to respond to the initial benefit suspension." AR 204.

After discussing Plaintiff's finances further, ALJ Dietterle stated:

> So, what I will do is I will review all of the evidence in your file, what we talked about today. You will receive a written decision in the mail from me. If you're in agreement with the decision, there'll be nothing further that you have to do. If you disagree with the decision, there will be certain appeal rights.

AR 205. ALJ Dietterle then asked Plaintiff if there was anything further before they closed the hearing, and Plaintiff stated "[n]o." Id.

On April 5, 2018, ALJ Dietterle issued a notice and decision denying Plaintiff's request for waiver of overpayment. AR 9–15. In that decision, ALJ Dietterle found that Plaintiff was at fault for the overpayments, and that Plaintiff did receive the Notice mailed to him by SSA on September 15, 2015. AR 14. The ALJ based his determination that Plaintiff received the Notice on the fact that the Notice was properly addressed to Plaintiff's address, which was also listed on Plaintiff's ALJ hearing brief dated January 2, 2018. Id. Additionally, Plaintiff failed to submit any evidence into the record suggesting that the mail was returned due to insufficient postage. Id. The ALJ specifically stated that Plaintiff's "argument that the Notice was returned due to insufficient postage is without basis as no returned mail is included in the record." Id. ALJ Dietterle also determined that Plaintiff was at fault in accepting the overpayments because "during the time in question, [Plaintiff] and his wife had bank accounts" exceeding the resource limit, and neither his "nor his wife's bank accounts are of the type included in the list of excluded resources" under the applicable regulations. AR 15.

Plaintiff requested review of ALJ Dietterle's decision and on October 31, 2018, the Appeals Council issued a notice informing Plaintiff that his request for review was denied. AR 4–6. On December 17, 2018, Plaintiff commenced the instant litigation. ECF No. 1.

## **LEGAL STANDARD**

When a claimant is overpaid social security benefits, the SSA is entitled to recovery of the overpaid amount. 20 C.F.R. § 404.501. However, claimants are entitled to a waiver of overpayment recovery if they establish that (1) "they are 'without fault' with respect to the

overpayments, and . . ." (2) "recovery would either defeat the purpose of [the Social Security Act], or would be against equity and good conscience." McCarthy v. Apfel, 221 F.3d 1119, 1126 (9th Cir. 2000); see also Deuschel v. Comm'r of Soc. Sec. Admin., 526 Fed. Appx. 715, 717 (9th Cir. 2013). A claimant will be deemed "at fault" if the overpayments resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The ALJ is required to make findings of fact as to the three definitions of fault, and the burden of proof is on the claimant. Argue v. Berryhill, 2018 WL 2113091, at *2 (S.D. Cal. May 7, 2018) (citing Anderson v. Sullivan, 905 F.2d 1540 (9th Cir. 1990)). Furthermore, where a claimant's credibility is a critical factor in the proceedings, the ALJ must provide an explicit finding as to whether or not the ALJ believes the claimant. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Albalos v. Sullivan, 907 F.2d 871, 873 (9th Cir. 1990).

The Court may only reverse the ALJ's decision if it is not supported by substantial evidence, or if the ALJ failed to apply proper legal standards. Argue, 2018 WL 2113091, at *2. "Substantial evidence is such relevant evidence as a reasonable mind might, upon consideration of the entire record, accept as adequate to support a conclusion," see McCarthy, 221 F.3d at 1126 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); it is "'more than a mere scintilla,' but 'less than a preponderance.'" McCarthy, 221 F.3d at 1126 (quoting Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 2000)).

**DISCUSSION**

Plaintiff argues that the "ALJ failed to consider evidence, testimony and pleading" concerning Plaintiff's allegation that he never received the Notice informing him that his SSI would be suspended. Plf's Mot. at 2. Specifically, Plaintiff alleges that Defendant's field office "failed to affix enough postage to [the] 38 page paper notice [sent] to Plaintiff," and that a case worker, Anne Sauerman, researched this issue and "counseled Plaintiff about [it]." Id. Plaintiff

7

further alleges that when he attended the ALJ hearing, he brought "an unopened large envelope from Defendant's Baltimore office that was Postmarked October 19, 2015, which was after suspension of Plaintiff's SSI." Id. at 3. Plaintiff argues that because the ALJ failed to consider said evidence, Plaintiff's Constitutional right to due process was violated. Id. at 2–3.

Defendant contends that because Plaintiff does not dispute the substance of his overpayment or the fact that he was deemed at fault by the ALJ, the only issue in this matter is whether Plaintiff was properly notified of the SSA's "intent to reduce SSI payments because of an overpayment." Def's Mot. at 3, 6. Defendant argues that because the issue of whether Plaintiff received notice involved a conflict in the testimony—and the ALJ reasonably found in favor of Defendant on this issue—the ALJ's determination must be affirmed. Id. at 4. Defendant claims the ALJ's finding as to whether Plaintiff received notice was reasonable because (1) the Notice was properly addressed to Plaintiff, and (2) there was no evidence of returned mail in the record. Id. Defendant further argues that even if Plaintiff was not properly notified, any error in notifying Plaintiff was harmless. Id. at 3.

Because Plaintiff only challenges ALJ Dietterle's finding as to whether Plaintiff received proper notice of the intent to suspend payments [see generally Plf's Mot.], the only issue for this Court is whether AJL Dietterle's credibility finding—that Plaintiff did receive the Notice—was supported by substantial evidence. See McCarthy, 221 F.3d at 1125; Albalos, 907 F.2d at 873–74. As set forth below, there is substantial evidence supporting the finding, and Plaintiff's Due Process argument fails because ALJ Dietterle reasonably and explicitly concluded that Plaintiff received the Notice that was mailed to him on September 15, 2015. AR 14.

At the January 9, 2018 hearing, ALJ Dietterle listened to Plaintiff's testimony and stated that he would review all the evidence in Plaintiff's file, as well as what they talked about at the hearing. AR 205. ALJ Dietterle's ultimate decision acknowledged Plaintiff's argument—that Plaintiff did not receive the Notice—and explicitly concluded that there was no evidence in the record to support that contention. AR 14. Though Plaintiff brought an unopened envelope to the hearing which he testified was postmarked October 19, 2015, Plaintiff did not open the envelope or provide the envelope and contents to the ALJ. See AR 191–205. Plaintiff also did

not testify that the envelope or its contents contained evidence that the Notice mailed on September 15, 2015 was returned to the SSA as undeliverable due to insufficient postage or any other reason. See id. Rather, Plaintiff explained that he requested the Notice because he did not receive the September 15, 2015 mailing and the Notice he requested was mailed on October 19, 2015 and was in the sealed envelope. AR 196–98. The fact that Plaintiff requested and received a Notice in an envelope postmarked for October 19, 2015 does not constitute evidence that Plaintiff did not receive the September 15, 2015 Notice or that the September 15, 2015 Notice was returned to the SSA for insufficient postage. As a result, there is no evidence, other than Plaintiff's testimony, that he did not receive the September 15, 2015 Notice and substantial evidence that he did receive it, including that it was mailed to the correct address and there is no evidence in the record of a returned envelope. See generally AR.

In addition, Plaintiff's testimony that he saw notes on Anne Sauerman's computer that the Notice was returned as undelivered constituted self-serving testimony, and ALJ Dietterle was entitled to disregard it given the lack of documentary or evidentiary support. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) ("The ALJ may, as in other cases where credibility assessments are necessary, disregard self-serving statements if they are unsupported by objective evidence."); Anderson, 905 F.2d at 1540 (affirming that an ALJ's credibility determination was based on substantial evidence after the plaintiff provided testimony at the hearing but no documentation to support his contention). Plaintiff was given explicit instructions on how to provide documents supporting his claim [see AR 124, 148] and repeatedly failed to do so. Given the lack of support, the law and facts justify the ALJ's decision to disregard Plaintiff's testimony regarding the undelivered Notice.

Plaintiff does not challenge the amount of the overpayment; he only argues that his Due Process rights were violated because he did not receive the September 15, 2015 Notice. See Plf's Mot. at 2–4. ALJ Dietterle identified and applied the correct legal standard. AR 12–14. As discussed above, there is substantial evidence in the record supporting the ALJ's decision to disregard Plaintiff's self-serving, unsupported testimony and to find that Plaintiff did receive the

September 15, 2015 Notice.[2]  Accordingly, the Court recommends that Plaintiff's summary judgment motion be denied and Defendant's be granted.

## **CONCLUSION**

Based on the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment to waive the 10 percent overpayment penalty and pay back what has already been recovered be **DENIED** and Defendant's cross-motion for summary judgment to affirm ALJ Dietterle's decision denying Plaintiff's requests be **GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **July 5, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 19, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 6/12/2019

Hon. Barbara L. Major
United States Magistrate Judge

---

[2] The Court notes that even if Plaintiff did not receive the September 15, 2015 Notice, he admittedly received verbal notice and the October 19, 2015 Notice. See AR 196–99. Moreover, Plaintiff received the required Due Process opportunities to challenge the overpayment award. See 124, 148, 191–206.  Finally, Plaintiff agreed that the amount of the overpayment was correct. See AR 195.  As a result, even if Plaintiff did not receive the September 15, 2015 Notice, that error was harmless.